MSWordDoc Word.Document.8 Final case this morning is Gail M. Peterson v. Merit Systems Protection Board, 2016-1690. Mr. Robinson, please. May I please accord, Judge Laurie, Wendell Robinson on behalf of Mrs. Peterson. Ms. Peterson is here as present, Your Honor. To the courts, I'd just like to indicate that I've tried to raise the issues in the law as clearly as I could in the brief itself. My argument here, although I requested 10 minutes, is certainly not going to be 10 minutes. But I would just like to bring the court the single issue that I am requesting the court to do in this case. And that is to accept the imputed knowledge rule here. Now, the Merit Systems Can I ask you a question? Why didn't you file a reply brief when the government argued that imputed knowledge is not the standard? Why didn't you file a reply brief to argue that she would satisfy some alternative standards? Because, Your Honor, I felt that based upon the government's argument, I think one of the arguments they stated was they basically had inherent provision in there to do that. I felt that I had laid out the argument as clearly and concisely as possible. Their reply was not necessary. Do you see a distinction between imputed knowledge and constructive knowledge? I clearly do, Your Honor. Imputed knowledge means that the knowledge that the decision makers had is imputed to the person above them and that that person has the knowledge at the same time. Constructive knowledge means someone has to come in and prove that constructive knowledge has been proven. Imputed means it's there without any proof of showing that it has been constructively placed on someone. And in this particular instance, I think the board did not state that Mrs. Peterson did not allege allegations that would substantiate or meet the elements of whistleblower. The only argument was that Mr. Leonard was not made aware of them prior to December 19, 2013 action. She said herself that he didn't know. Well, no, that's what the board felt. And they said that even though she stated that Dr. Leonard did not know that, then she cannot say that the actions taken were as a result of knowledge that he had. I agree with that. The point I'm making to the court is that based upon the decision makers that were under Dr. Leonard, Winona Scott and Bobby Moore, these were not individuals that had ministerial tasks. They were decision makers. And if you take a look at the decision from a letter from Carol Lerner from the Office of Special Counsel to the President, although it was May of 2015, they basically substantiate the allegations that Mrs. Peterson had made to Mr. Moore and Mrs. Scott. And that is that she made allegations, some are pretty serious, and that is that there were a number of complaints that were brought against individuals in the Office of Civil Rights and Community Affairs. Including Mrs. Scott and Mr. Leonard that they knew about. Carol Lerner had said that those cases had languished for over 180 days. And Mrs. Peterson had told them that not only had they languished, but some of those cases against those high-level individuals were deleted. And that even when those cases that weren't deleted that were brought forward, that the processing of those claims were done in violation of the law. Okay, so I don't think anyone is taking issue with whether or not there are sufficient allegations of whistleblower activity as it relates to the lower-level managers. But I don't even see any allegation in the record that those managers induced Mr. Leonard or affected Mr. Leonard's decision-making with respect to the transfer. In other words, not only was there an allegation that they never told him, but there were no allegations that they made to Mr. Leonard. That they somehow got him to do what he did. Well, your Honor, I can understand that, and that is exactly why I'm stating the imputed knowledge rule should be imposed. And that is, if you have individuals who are below you at assistant secretary level, and this involves complaints not only involving the assistant secretary, but Dr. Leonard himself, that Mrs. Peterson raises to the attention of everyone, that knowledge should be imputed to Dr. Leonard or to the person who takes the action. I agree with you. If I had some information to show that, I would make that. I would not be arguing the imputed knowledge rule. But in this particular situation, what we're saying is knowledge that was held by managers and assistant secretary who met frequently with Dr. Leonard, that information should be imputed to Dr. Leonard, particularly when that information was adverse. Because it implied, and the Office of the Special Counsel in its letter to the President in 2015, substantiated what Mrs. Peterson said. She said that many of those complaints were against Mr. Leonard, Mrs. Scott. Some of the complaints were deleted, and that they knew about that information. So what I'm saying is, if you have an assistant secretary that knows about this action, and based upon the complaints and allegations that were made, these were made in July of 2008, July 8, 2013, and March 2013. And the adverse action took place December 29, 2013. That was relayed to Mrs. Peterson by Assistant Secretary Scott. Now, what I asked the courts to do, because I couldn't find any precedent with respect to that issue being here, was to adopt maybe some precedent, some other case law. I cited the negligence theory, which might not be all that, but we don't have any cases that are on point. And I also said that sexual harassment cases, where in that particular case information is given to some managers, is imputed. And the reason the court said that was because when you have allegations, and I'm not saying the allegations here are equal to a sexual harassment case. All I'm saying is the theory behind imputing knowledge in sexual harassment cases was that the allegations are so severe, that if someone on that staff knows about it, there's an obligation to take it forward, and it's imputed if you do not. Because otherwise what would happen is the supervisor could say, I never knew about it. No one told me. And so what I'm asking this court to do is to impute the knowledge to the person, in this case Dr. Leonard, that was in the preview of Bobby Scott, Winona Scott and Bobby Moore, because they met frequently. And all of the information, virtually all information, that Ms. Peterson stated was substantiated by the Office of Special Counsel in its report and its letter to the President in May of 2015. I might also add that one of the things that they found was, is that there was unreasonable responses by the office. The individuals had been harmed, had never been gotten their redress. And it recommended that some action be taken so that the individuals who were aggrieved in harm should have sufficient redress. And I'm asking for the imputed... Mr. Robinson, knowledge is a question of fact, right? I think that's correct, Your Honor. And we defer greatly to the board with respect to questions of fact. You're asking us to impute knowledge. Isn't that also a fact? And the board didn't find imputed knowledge, so how can we review that? Well, I think because if you look at what the board said, the board said that they had no evidence that the information was given to Dr. Leonard. What I'm saying is there's no question that the board said you made these allegations. They meet the whistleblower criteria. But you haven't substantiated to us that they got to Dr. Leonard. And that's why I'm asking the court... And that's a question of fact. Well, we know for a fact, Your Honor, that the knowledge was in the purview of knowledge of Winona Scott, Assistant Secretary, which in the facts were known by Bobby Moore, and the Office of Special Counsel found that that information was there. But the decision-maker didn't have the knowledge. The decision-maker did not. That's correct. And we have no basis to overturn that, given our limited standard of review, and there wasn't a decision on imputed knowledge that we can review. Well, Your Honor, you can review it if it's arbitrary and capricious, and you find that based upon the law and the facts that was in it, that the decision was rendered and it was unsubstantiated based upon that. Are you asking us to send it back and ask them to apply a different legal standard? That's correct. What I'm saying is you should reverse it and send it back, and what they should do is what the Office of Special Counsel said. You have to follow the rules that you are supposed to follow when you conduct these activities. Three things. First, Mrs. Peterson's complaints were not taken up to Mr. Leonard, although the Assistant Secretary and Mr. Moore, who was the Director of Corporate Services, knew about them. Second, the complaints that were brought in there, the Office of Special Counsel found, were in excess of 180 days, and they also found, thirdly, that the complaints that were filed against these individuals were deleted, and I guess fourth is, is that when they did conduct hearings, those hearings were in violation of the laws that the Office of Civil Rights was supposed to conduct. And so, yes, I'm asking you to send it back and tell them to comply with the requirements of the rules that the Office of Special Counsel said that they had violated and recommended that they should follow whenever they deal with the aggrieved individuals and make the aggrieved individuals whole. I have nothing else to respond to except if you have questions, I'll have a brief period of rebuttal. We will save the rest of your time for rebuttal if you need it. Thank you, sir. Ms. Lederer. May it please the Court, the MSPB properly found that Petitioner failed to make a non-frivolous allegation that the individual who reassigned her, Dr. Leonard, knew of her whistleblowing activity, and we would point out that it's Petitioner's burden to make that allegation. Well, they made a finding that she didn't allege that he actually knew. Correct. But this whole debate about imputed knowledge, constructive knowledge, there was never a finding that there was an insufficient basis upon which to conduct a constructive knowledge analysis, even if you're correct that that's what the law is as opposed to imputed knowledge. Well, the problem is Petitioner actually alleged that he did not know. But actual knowledge is different from constructive knowledge. Correct. So now she's attempting to allege that you should impute knowledge to him, even though he didn't actually know, which is contradictory. And also she didn't present that to the judge. Before the judge, the limited information that she presented was that he did not know and that Ms. Scott was withholding... But wasn't there enough information from which the judge could say that there was allegations that would at least support a constructive knowledge analysis, given how senior these people were that all knew about it? No. In fact, there was not. She did not satisfy the constructive knowledge test because she didn't allege that any individuals who knew about it actually influenced the decision. Right. But did the judge make an analysis of whether she satisfied the constructive knowledge test? The judge, based on the bare minimal information that Petitioner provided, just found that she didn't meet the knowledge and timing test. So she didn't show that the individual who reassigned her, Dr. Leonard, she didn't even allege, she's not required to prove it at this stage, but she didn't allege that he knew. And so therefore she didn't make a non-verbose allegation. So there's no board jurisdiction over that claim. Did the board deal with the question of imputed knowledge? Well, we argue that there's no reason to force the board to adopt a new test when the board already has ways to effectively impute knowledge to managers. For example, in the Carney case, the board imputed knowledge. But you didn't answer the question, did the board consider whether there should be imputed knowledge? The board did not consider that because Petitioner did not allege that before the judge. In other words, that's a new argument, which is not properly before us. Correct. We're a reviewing court. We review the decision of the board. Correct, yes. Unfortunately, much of the information that Petitioner has submitted to this court was never submitted to the judge. So based on what the judge had to go on, which was mainly OSC's letter closing its investigation, the judge was left to sort of infer what arguments Petitioner was actually making. So based on that, the judge found that she was alleging that he did not have knowledge. And so the test failed, the jurisdictional test fails at that point because it's her burden to make the non-verbose allegation. What are the circumstances that the board's standard for, I'm not sure it matters whether one calls it constructive or imputed, but knowledge might be available? Well, as I was saying before in the Carney case, the board imputed knowledge to a manager where the Petitioner or the appellant had alleged that management had been scrutinizing his activities. So they imputed knowledge of his representational activities based on that allegation. What work is being done by imputed there as opposed to just it's a fair evidentiary inference? If they were watching everything he did, you can infer that they knew that one. Correct. I had taken that imputed or even constructive has some legal character that says we're going to say you knew, even though as a simple factual matter, we know you didn't. I'm not aware of any case where the board has found that as a factual matter, they didn't know an imputed knowledge to them. That's the test that Petitioner wants the board to now adopt. Well, the circumstances that I previously identified are exactly one of the legal circumstances in which that exists, where there's evidence that the lower-level managers who knew influenced the decision-making, even if the ultimate decision-maker didn't know. Correct. That would be the constructive knowledge test that the board has, where you're arguing that a lower-level manager knows about it and is influencing the decision of the higher-level manager. You're saying in the Carney case, we actually imputed knowledge? Or the board imputed knowledge? I don't think the board actually used the phrase imputed knowledge, but the board did infer from the circumstances because they were aware of his activities that they must have known. Here in this case, she's not alleging that he must have known. She's alleging he didn't know. And she's also not alleging that people who did know influenced his decision. She's saying that they didn't tell him. Ms. Scott didn't tell him. Look, we're just in a circumstantial evidence analysis. These are pretty serious whistleblowing allegations that were made, right? Yeah, there's no dispute that she made a whistleblowing allegation. And so the likelihood that some senior manager didn't tell their boss seems kind of low, doesn't it? Well, based on the timing or the knowledge of the timing test, that's why the board has that test. So the allegations that based on the timing of her transfer, which is the only actual personnel action that she's alleging, I believe that that transfer occurred in December of 2014. And so the only events that occurred prior to that were the actual disclosures that she made. I believe there was a memo. The only allegation she presented to the judge was that there was a memo on July 8th, 2013 to Ms. Scott. Whether Ms. Scott reported that to Dr. Leonard or not, we have no way of knowing because the petitioner is not even alleging that she did. And there's no other information in the record. What was the asserted basis for the transfer? That was another thing that wasn't fully developed. But I believe that the agency in the agency brief stated that he, Dr. Leonard, was aware that there were problems in the department and had reassigned the manager over Ms. Peterson and also Ms. Peterson in an attempt to remedy those problems in the department. But that's all we really have in the record. And I don't know if I don't think petitioner made any allegations about that before the judge. So, as I mentioned, petitioner's allegation did not satisfy the knowledge and timing test, which requires that the official taking the action knew of the disclosure and that the action occurred within a reasonable time or within a time such that a reasonable person could conclude that the disclosure was a contributing factor in the personal action. Here, as I mentioned, we don't have any link between her disclosures and the action, either or no real allegation that the action was taken because of the disclosures or that Dr. Leonard knew or that anybody with knowledge influenced him in his decision. So, in the absence of those allegations, because it's petitioner's burden to show a non-privileged allegation, we just argue that she has not met that burden and, therefore, the board did not have jurisdiction over this case. If there are no further questions, I'll... Thank you, counsel. Mr. Robinson has a little rebuttal time if he needs it. Thank you. Your Honor, counsel made reference to the July 8, 2013 memo that was prepared and submitted. And that memo states very clearly the allegations that Ms. Peterson referenced to not only Winona Scott, Bobby Moore, but also to Denise Banks, all which are decision makers. And that action took place prior to December 29, 2013, in which Winona Scott told Ms. Peterson that she was being removed from her position and that another individual was coming in to take over for the actions. Her position is acting chief of the division. So, Winona Scott made that reference. That is in the statement that Ms. Peterson submitted in July of 2013, that she was told about the action that took place. And later on, she indicated that Ms. Winona Scott, on December 28, 29, 2013, is when Ms. Scott came in and told her. Ms. Scott knew of all these allegations against her. Now, the government references the Carney case, and although it doesn't mention imputed, it's sort of like it says you should know of this, or if you didn't, you should have known. In this particular case, as Judge O'Malley indicates, all of these individuals, Mrs. Banks, Mr. Moore, and Mrs. Scott, all knew about the actions that took place. Now, that's in the July 8, 2013 letter. The board knew about that. That information, even if you apply their constructive knowledge, it would meet that test, because the information that the decision makers had, at least the assistant secretary, should be imputed or constructively imposed upon Dr. Leonard when he made the final decision. But the decision was made and was communicated to Ms. Peterson by Assistant Secretary Winona Scott four months, five months after Mrs. Peterson submitted her memo on July 8, 2013, recounting all of the wrongdoings that's been happening and which were substantiated by the Office of Special Counsel in the letter to the President in May 2015. There's one thing I want to clarify. There's confusion in the record about what jurisdictional statement was actually submitted. The jurisdictional statement that you gave to us doesn't appear to be in the appendix or doesn't appear to be the same one that was actually submitted during the course of the proceedings. Am I wrong? Would Your Honor indulge me for a moment, please? That's correct, Your Honor. If you look at, I think it's five pages of the brief, that's the correct provision of statement regarding jurisdiction. I'm talking about what you put in the appendix. Which page number, Your Honor? Appendix page two, or the appendix to your brief page two. Yes, Your Honor. What's the question again that I tossed? There's two different, well, it appears that the jurisdictional statement that you submitted to the board is not the same one that you submitted to us. Am I wrong? No, you're not wrong, Your Honor. That's correct because the jurisdictional statement before the board would require actions taken differently than that would be before the board after the matters were decided by the board in its final order. Okay. Thank you, Your Honor. Thank you, counsel. We'll take the case under advisement. Thank you, ma'am. All rise.